Roby v. Eggers.

Filed Feb. 23, 1892.

---

No. 15,265.

ROBY v. EGGERS.

ACTION.—*Splitting.*—An entire cause of action can not be split up so as to
enable a party to maintain more than one action upon it.

SAME.—*Parties Dividing Cause of Action.*—Parties having a common cause
of action can not divide it up so as to enable each to bring a separate
action upon it.

JUDGMENT.—*Tort.—Splitting up Action.—Res Judicata.*—An entire claim
arising from a single tort can not be divided and made the subject of
several suits, however numerous the items of damages may be; and a
judgment upon any part of such a cause of action is a bar in other ac-
tions arising out of the same tort.

Roby *v.* Eggers.

SAME.—*Prosecuting Suit in Another's Name.—Effect.*—One who prosecutes a suit in the name of another to establish a right of his own is as much bound by the result of such suit as he would be if he were a party to the record.

REAL ESTATE.—*Res Judicata.—Judgment for Recovery of Part of Tract.*—If the owner bring an action to recover possession of a single and undivided tract of land and succeed, he can not afterwards bring an action, upon the same grounds he brought the first action, to recover the remaining part.

From the Porter Circuit Court.

*H. A. Gillett* and *A. L. Jones,* for appellant.

*A. C. Harris, E. D. Crumpacker, S. C. Spencer* and *L. Cox,* for appellee.

COFFEY, J.—This was an action in ejectment commenced in the Lake county circuit by the appellant against the appellee on the 13th day of January, 1875.

The land in dispute lies in a triangle formed by the State line and Lake Michigan, at the extreme northwest corner of the State.

The triangular tract was cut into lots by the United States survey.

The north lot is numbered one and the lot immediately south and adjoining number one is numbered two. It was swamp land, and was formally conveyed by the United States to the State of Indiana by Swamp Land Patent No. 4, on the 24th day of March, 1853. It is situated in section 36, township 38 north, of range ten (10) west, in Lake county.

Eggers, the appellee, purchased and paid for lot numbered one on the 19th day of July, 1853, and the State executed to him a patent therefor on the 17th day of January, 1854. The State executed a patent to George W. Clark for lot numbered two on the 3d day of July 1854.

The cause was tried in the Lake Circuit Court at the February term, 1877, resulting in a judgment for the defendant. The plaintiff was granted a new trial under the statute, as of right, and at the April term of the court, in the year

1880, the cause was dropped from the docket, with an agreement that it might be reinstated, by either party, at any time on motion. The cause was reinstated on motion of the appellant, Roby, on the 4th day of September, 1888, and the venue was changed to the Porter Circuit Court. At the January term of that court for 1889 the cause was retried, resulting in the judgment from which this appeal is prosecuted. The jury returned a special verdict, from which, among other things, the following facts appear:

The line dividing the States of Indiana and Illinois was first run from the Wabash river to Lake Michigan about the year 1821. Under an act of Congress it was retraced about the year 1833, and the government erected a monument on the line, as retraced, 159.323 miles north of the Wabash river. The monument is about 790 feet south of the lake shore. In the year 1851, the land being vacant, the appellee, Eggers, settled upon what he believed to be lot numbered one. He found a stake driven in the earth on the State line south of the monument, at a point 1,704.06 feet south of the center of the monument. He also found a similar stake just above high-water mark on Lake Michigan, 1,538 feet distant from the stake first mentioned. The line running from the stake on the State line to the stake on the lake shore bears three degrees and twenty minutes south from a due east and west course. Eggers, believing that these stakes marked the south line of lot numbered one, in the year 1851 built a shanty on lot two north of said line, and began the erection of a fence between the stakes on the line, and also a fence from the stake on the State line north to the monument, for the purpose of enclosing the land, which fences were completed in the year 1852. In the same year he plowed and cultivated a portion of the land north of and down to the fence. In the latter part of 1852 he built a frame house, consisting of several rooms, within his enclosure, in which he resided. The house was built on lot numbered one, about 800 feet north

of the fence. In the year 1855 he planted an orchard on the premises, and in the same year, one of his children dying, he buried it on the premises, and has ever since maintained the grave. The grave is about 350 feet south of the house, and the orchard is between the house and grave. From the time he constructed the fence until the commencement of this suit, Eggers, each year, cultivated the tillable land north of the fence, and up to the fence. The portions not tillable and growing grass were every year during that time mowed or pastured by him. During all this period he claimed to own all of the land north of the fence, except such as he sold to certain railroads for right of way.

Clark, after he became the owner of lot numbered two, was often at the house of Eggers, and knew of the occupancy and of the existence of the fence. The fence, at times, was partially destroyed by fire or other causes, but was restored within a reasonable time, from time to time, until the year 1871, when it was principally destroyed by fire, and rebuilt in the year 1873 or 1874; but from the time it was burned down until it was rebuilt there were portions of it, and many stakes and posts along the line, clearly and visibly marking the same; and during all the time from the year 1851 to the commencement of this suit Eggers was in open and exclusive possession of all of the land north of the fence running easterly from the State line to Lake Michigan, and during all that time openly and notoriously claimed the same as his own.

George W. Clark died in the year 1866, testate, appointing Jacob Forsyth and Robert Clark executors of his will. The will was probated and recorded in Lake county on the 26th day of December of that year. He devised lot numbered two to Caroline M. Forsyth, Sarah J. Clark, Robert D. Clark and Henry F. Clark. On the 1st day of December, 1868, the executors, under competent authority, conveyed lot two, with other lands, to said Caroline M. Forsyth, and on the same day Sarah J. Clark, Harriet S. Clark, Robert D.

Clark and Henry F. Clark, conveyed the same real estate to her by quitclaim deed. On the 9th day of March, 1869, Caroline M. Forsyth conveyed by warranty deed to Daniel A. Jones, Oramel S. Hough, Charles M. Culbertson and Charles L. Raymond. On the 15th day of July of the same year Raymond conveyed to Herbert B. Reed. On the 15th day of July, 1873, Jones, Culbertson, Hough and Reed, conveyed to the appellant, Roby. On the 7th day of August, 1873, Roby conveyed to Dayton S. Morgan, and on the next day, August 8th, Morgan conveyed all of lot two, in the possession of the appellee, Eggers, to appellant, Roby, and, also, all the remainder of the north twenty acres of said lot two. At the time Roby conveyed to Morgan, both Roby and Morgan claimed that the north line of lot two ran some distance north of Eggers' south fence, and Morgan reconveyed to Roby without any consideration, and for the sole purpose of enabling Roby to negotiate and settle with Eggers for the possession and ownership of the portion of the lot in the possession of Eggers north of his south fence. On the 7th day of August, at the time Roby conveyed to Morgan, they executed a written agreement between them fixing the ownership of the lot. Pursuant to such agreement Roby brought this suit in his own name, as the trustee of Morgan, for the purpose of recovering that portion of the lot in the possession of Eggers, being the portion north of Eggers' south fence, for the use and benefit of Morgan. Morgan defrayed the expense of this suit until the 17th day of January, 1877, when he conveyed an undivided one-half interest to E. Ashley Smith, since which time they have jointly borne the expenses of this suit, and at the time of the trial it was prosecuted for their use and benefit, except as to a contingent interest in the land in favor of the appellant under the contract above referred to.

After this case was dropped from the docket of the circuit court of Lake county, the appellant, Roby, Morgan and Smith, determined to bring an action in ejectment in the Cir-

cuit Court of the United States for the District of Indiana, and on the 15th day of July, 1882, Roby directed an attorney, U. J. Hammond, to begin an action in that court in the name of Smith and Morgan, citizens of New York, against Eggers, a citizen of Indiana, for the north part of lot numbered two. On the 26th day of July of that year the complaint was filed, alleging that Morgan and Smith were the owners in fee simple, and entitled to the possession, of the following described real estate in Lake county, to wit: "All of the north part of lot numbered two, in section 36, township 38 north, of range 10 west, of 2d principal meridian, which lies west of the track of the Lake Shore and Michigan Southern Railroad, and north of a line parallel with the north line of said lot two, and 753 feet south therefrom." Roby furnished an abstract of title, which was filed in the cause, showing the same deeds introduced in evidence in this cause, except the deed from Morgan to Roby of date August 8th, 1873.

To the complaint in the cause Eggers filed a general denial.

The cause was tried on the 20th day of January, 1883. Roby was present and testified as a witness on behalf of the plaintiffs, and argued the cause as an attorney for them.

On the 26th day of January the court rendered the following judgment:

"Now come the parties by counsel, and by agreement this cause is submitted to the court for trial, and the court, having heard the evidence, and being fully advised, finds for the plaintiffs, and orders and adjudges that they are entitled to and shall have and recover of the defendant the possession of so much of said lot 2 as lies south of the south line of lot No. one (1), as indicated by a fence constructed and maintained by the defendant as and on said south line, said fence running from the State line eastward to Lake Michigan, and assesses the damages at $1.00 and costs, taxed at $——, which the plaintiffs recover of the defendant. All of which is finally ordered, adjudged and decreed."

Roby filed his own affidavit in support of a motion for a new trial, which was denied.

The fence which the court adjudged to be on the south line of Eggers' land was the fence constructed by him in 1852, and since maintained by him.

This statement embraces all the material facts in the case.

As the appellant shows a perfect chain of title from the Government to himself for the whole of lot two, it follows that he was entitled to recover in the Circuit Court, unless the appellee made good some affirmative defence.

In that court the appellee relied upon four several defences, namely:

*First.* Former adjudication of the matters involved in this suit.

*Second.* The twenty years' statute of limitations.

*Third.* Estoppel; and,

*Fourth.* Champerty.

If it is true that the matters involved in this controversy have once been litigated and settled between the parties to this suit, in a court of competent jurisdiction, then the other matters relied upon as a defence become wholly immaterial, and need not be inquired into; hence we proceed first to an examination of the matters relied on as constituting this defence.

It is insisted by the appellee that the case in the Circuit Court of the United States between Smith and Morgan, on one side, and the appellee here, settled the right of the appellee to the ownership of the land involved in this suit, and that the appellant is bound by the result of that suit; while, on the other hand, it is claimed by the appellant that the judgment rendered by the Circuit Court of the United States is void.

The contention of the appellant that this judgment is void is based, principally, upon the fact that it appears by the special verdict in this case that no part of the land sued for

in the Circuit Court of the United States was south of the line fixed by the judgment rendered in that cause.

Whatever else may be said of this judgment, it is certain that it fixed the fence erected by Eggers in 1852 as the line between lots one and two, and fixed the right of the plaintiffs in that case to recover their costs as against Eggers. If it be true, as contended here, that no part of lot two for which suit was brought was south of the fence erected by the defendant, the court probably erred in rendering judgment in favor of the plaintiffs for the recovery of any land, and for the recovery of costs; but, as that was an error in favor of the plaintiffs, they should not now complain. We think the effect of that judgment was also an adjudication that the plaintiffs in that case were not entitled to recover from Eggers any portion of lot two situated north of the line which it fixed. The case was appealed to the Supreme Court of the United States, and is reported in 127 U. S. 63.

It was contended in that court that there was, in effect, a general finding for the plaintiffs as to all the land in dispute, and that judgment should have been in their favor for the whole of the premises described in the complaint. In relation to this contention, the court said: "But the record, fairly interpreted, does not show any such finding. * * * That order plainly indicates a general finding for the plaintiffs only as to a part of the land in controversy, that is, as to the part described in the order. The judgment is for the recovery only of the possession of the premises so described. Such a judgment was proper, if the plaintiffs failed to show title to the remaining part of the premises in dispute."

It is an elementary principle of law that an entire cause of action can not be split up so as to enable a party to maintain more than one action upon it. This is especially true of a cause of action sounding in tort. An entire claim arising from a single tort can not be divided and made the subject of several suits, however numerous the items of damages may be, and a judgment upon the merits of any part

of such cause of action will be available as a bar in other actions arising out of the same tort. 2 Black Judg. 738.

Thus it has been held that for a single and complete trespass upon and injury to an entire tract of land several actions for damages can not be maintained, a recovery of damages in respect to a part of the land being a bar to any further recovery for the same trespass. Black Judg., *supra;* *Pierro* v. *St. Paul, etc., R. W. Co.,* 39 Minn. 451; *Cunningham* v. *Morris,* 19 Ga. 583. See, also, *Stewart* v. *Dent,* 24 Mo. 111; *Brannenburg* v. *Indianapolis, etc., R. R. Co.,* 13 Ind. 103; *Board, etc.,* v. *Applewhite,* 62 Ind. 464; *Sutherlin* v. *Mullis,* 17 Ind. 19.

In this case Smith and Morgan brought their action for the recovery of a part of a single tract of land, alleging that Eggers unlawfully held possession of the same. The action was prosecuted to final judgment, in which they recovered judgment for so much of the land as was located south of a line designated in the judgment, damages for its detention, and for costs of the action. This action is for the recovery of the same land which they sought to recover in that action. If that judgment is inoperative so far as it directs the recovery of land, by reason of the fact that no land is located south of that line, still it is binding and operative as a judgment for damages and for costs; in other words, it is not void. So, too, it settles the right of Eggers to hold all the land north of the designated line as against Smith and Morgan, inasmuch as they can not prosecute another action for its recovery.

In our opinion the judgment rendered by the Circuit Court of the United States for the District of Indiana estops Smith and Morgan from asserting any claim to the land in controversy in this suit.

The question still remains as to whether that estoppel binds the appellant in this case. In the consideration of this question it must be kept in mind that this suit was instituted by the appellant as the trustee of Morgan and Smith; that at

the trial it was prosecuted for their use and benefit, except as to the contingent interest of the appellant under his contract with Morgan.

Were it not for the contingent interest of the appellant, the question would be free from difficulty, as the rights of both Morgan and Smith were settled in their suit against Eggers in the Circuit Court of the United States.

What the contingent interest of the appellant in the land is does not appear in the special verdict; but the suit in the Circuit Court of the United States against Eggers was instituted after the execution of the contract between the appellant and Morgan, and was instituted in the name of Smith and Morgan, under the advice and with the consent of the appellant. An abstract of title was furnished in that case by the appellant, omitting the deed from Morgan to himself, and when the cause was tried he was present as a witness on behalf of the plaintiffs, and, also, appeared and argued the cause as their attorney.

Parties having a common cause of action can not divide it up so as to enable each to bring a separate action upon it, and thus annoy a defendant with several suits. There was but one cause of action against Eggers, and if Smith, Morgan and the appellant jointly possessed this right, or if the appellant held a contingent interest in the land, by bringing suit in the name of Smith and Morgan he must be held to have consented that they should represent his interest as well as their own. Furthermore, by furnishing an abstract showing title in Smith and Morgan, he must be held as having represented to the court, in which the cause was pending, that they were the beneficial owners of the land, and to have thus enabled them to recover in that action. One who prosecutes a suit in the name of another to establish a right of his own, is as much bound by the result of that suit as he would be if he were a party to the record. *Palmer* v. *Hayes,* 112 Ind. 289; *Burns* v. *Gavin,* 118 Ind. 320; Freeman Judgments, section 174; *Montgomery* v. *Vickery,* 110 Ind.

211; *Stoddard* v. *Thompson*, 31 Iowa, 80; *Elliott* v. *Hayden*, 104 Mass. 180; *Train* v. *Gold*, 5 Pick. 380.

As the appellant in this cause procured the commencement of this suit in the Circuit Court of the United States in the name of Smith, and Morgan filed an abstract of title showing title in them, and prosecuted the suit for them as one of their attorneys, and thus procured a final judgment, involving the identical matters involved in this suit, we think he should not be heard to say now that he is not bound by the result of that litigation. *De Metton* v. *De Mello*, 12 East, 234; *Cromwell* v. *County, etc.*, 94 U. S. 351; *Shirley* v. *Fearne*, 69 Am. Dec. 375; *Tarleton* v. *Johnson*, 60 Am. Dec. 515; *Calhoun* v. *Dunning*, 4 Dallas, 120; *Shugart* v. *Miles*, 125 Ind. 445.

In speaking of the rule which prohibits the splitting of a cause of action, a learned author has said : " The principle which prevents the splitting up of causes of action, and forbids double vexation for the same thing, is a rule of justice and not to be classed among technicalities. It was intended to suppress serious grievances. In point of fact, this rule is not even a product of modern jurisprudence, but was well known in the Roman systems." 2 Black Judg., section 734.

As we have reached the conclusion that the appellant is bound by the result of the litigation in the circuit court of the United States in the suit of Smith and Morgan against the appellee in this case, involving the identical land involved here, and is estopped thereby from prosecuting this suit, and as the judgment of the circuit court should be affirmed for this reason, it becomes unnecessary to inquire whether the facts set out in the special verdict do or do not sustain the other defences claimed by the appellee.

Judgment affirmed.

Filed Dec. 17, 1891; petition for a rehearing overruled Feb. 23, 1892.